**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

DEMIAN DOMINGUEZ,

Plaintiff,

v.

DR. JOSEPH BENSON, *et al.*,

Defendants.

Case No. 3:23-CV-00474-CLB

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

[ECF No. 62]

This case involves a *pro se* civil rights action filed by Plaintiff Demian Dominguez ("Dominguez") against Defendants Joseph Benson ("Benson"), John Keast ("Keast"), Megan Sullivan ("Sullivan"), and Jessica Rambur ("Rambur") (collectively referred to as "Defendants"). Pending before the Court is Defendants' motion for summary judgment. (ECF No. 62.) Because Dominguez failed to exhaust his administrative remedies, the Court grants Defendants' motion.

## I.    BACKGROUND

### A.    Procedural History

Dominguez is an inmate in the custody of the Nevada Department of Corrections ("NDOC") who was formerly housed at Northern Nevada Correctional Center ("NNCC"). (ECF No. 9 at 1.) Dominguez filed a *pro se* civil rights complaint alleging Defendants were deliberately indifferent to his severe abdominal pain. (ECF No. 10.) According to Dominguez, between 2019 and 2023 he suffered severe abdominal pain and was not properly treated by Defendants, who are all medical professionals. (*Id.*) Dominguez concedes in his complaint he did receive treatment during this time period, but argues it was insufficient based on his level of pain and how bad his symptoms were. (*Id.*) Furthermore, Dominguez alleges Defendants rejected requests for additional treatment and testing on multiple occasions. (*Id.*) The Court screened Dominguez's complaint pursuant to 28 U.S.C. § 1915(A) and, based on the above allegations, permitted

Dominguez to proceed on a single claim Defendants were deliberately indifferent to his serious medical need in violation of the Eighth Amendment. (ECF No. 9 at 4-6.)

Dominguez continued to suffer from abdominal pain after he filed suit and received additional testing which revealed the source of Dominguez's pain was sludge build up in his gallbladder. (ECF No. 62 at 7.) Doctors removed Dominguez's gallbladder which resolved his abdominal pain. (ECF No. 73 at 11.) Dominguez now further alleges that had Defendants not been deliberately indifferent when he first started having abdominal pain, and had they run the proper tests, they would have discovered the problem with his gallbladder and saved him years of suffering. (*Id.* at 2-11.)

### B.   Factual Summary[1]

Because the Court finds Defendants are entitled to summary judgment based on exhaustion, the Court's factual discussion will focus on Dominguez's grievance history.

### 1.   Grievance # 2006-31-48902

On February 17, 2023, Dominguez filed an emergency grievance stating he had been "in severe pain for the last several days" and the medication medical gave him was not helping. (ECF No. 62-9 at 2.) Dominguez stated the pain was getting worse and "keeping [him] up 23 hours a day." (*Id.*) Prison staff responded the same day and told Dominguez he had not shown there was an emergency, and to submit a kite to medical about his pain. (*Id.*; *see also* ECF No. 62-8 at 7.)

### 2.   Grievance 2006-31-48820

On February 15, 2023, Dominguez filed an Informal Grievance stating he had submitted a kite to medical on October 22, 2019, (*see* ECF No. 64-1 at 4), regarding his abdominal pain, and that at present he was still experiencing pain. (ECF No. 62-7 at 2.) Rambur rejected Dominguez's grievance because it was untimely, noting grievances related to medical claims had to be filed within six months. (*Id.* at 3.) Dominguez filed a First Level Grievance arguing his grievance was in fact timely because although the pain

---

[1]   The facts stated in this section are undisputed unless otherwise noted.

began in 2019, it was an ongoing problem he currently suffered from. (*Id.* at 4.) Dominguez also stated he would file a lawsuit in federal court if his grievance was rejected again. (*Id.* at 5.) Sullivan rejected Dominguez's grievance because he did not attach the proper paperwork. (*Id.* at 6.) Sullivan stated Dominguez could resubmit his First Level Grievance so long as he attached his previously rejected Informal Grievance, Improper Grievance Memo, and related kites. (*Id.*)

Dominguez resubmitted his First Level Grievance, (*id.* at 7), and Sullivan rejected it again, this time noting it was untimely because Dominguez was attempting to grieve a medical issue from 2019, (*id.* at 9). Because this was Dominguez's third rejection, Sullivan checked the "Abuse of Inmate Grievance Procedure" box and told Dominguez not to resubmit. (*Id.*) Dominguez filed a Second Level Grievance stating there had been no resolution to his years of pain and prison staff were violating his Eighth Amendment rights. (*Id.* at 11.) Keast rejected Dominguez's Second Level Grievance because his Informal Grievance had never been accepted, noting that regulations prohibited an inmate from appealing a rejected grievance to the next level. (*Id.* at 12; *see also* ECF No. 62-8 at 8-9.)

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the

record, including but not limited to depositions, documents, and declarations, and then (2) show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The

nonmoving party must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of their contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The nonmoving party "must come forth with evidence from which a jury could reasonably render a verdict in the nonmoving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita*, 475 U.S. at 586.

## III.    DISCUSSION

Before addressing the merits of the Parties' arguments regarding exhaustion, the Court will first discuss Administrative Regulation ("AR") 740, the NDOC regulation governing grievances.

### A.    Grievance Procedure

AR 740 governs the grievance process at NDOC institutions. To properly exhaust their administrative remedies an inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3) Second Level. (ECF No. 62-4 at 11-16); AR 740.08-.10. First, the inmate must file an Informal Grievance within six months "if the issue involves personal property damage or loss, personal injury, medical claims, or any other tort claims, including civil rights claims." (ECF No. 62-4 at 11); AR 740.08(4)(A). An inmate's failure to submit an Informal Grievance within this period "shall constitute abandonment of the offender's grievance at this and all subsequent levels." (ECF No. 62-4 at 12); AR 740.08(8). NDOC staff are required to respond within 45 calendar days. (ECF No. 62-4

at 13); AR 740.08(12). An inmate who is dissatisfied with the response to their Informal Grievance may appeal to the First Level within five calendar days. (ECF No. 62-4 at 13); AR 740.08(12)(A).

This next grievance level is called a "First Level Grievance." (ECF No. 62-4 at 13); AR 740.09. A First Level Grievance "should be reviewed, investigated, and responded to by the Warden at the institution where the incident . . . occurred, even if the Warden is the subject of the grievance." (ECF No. 62-4 at 13); AR 740.09(1). However, "[t]he Warden may utilize any staff in the development of a grievance response." (ECF No. 62-4 at 13); AR 740.09(1)(A). The time limit for a response is 45 days. (ECF No. 62-4 at 14); AR 740.09(6). Within five days of receiving a dissatisfactory response to the First Level Grievance, the inmate must then appeal to the next level, called the "Second Level Grievance." (ECF No. 62-4 at 14-15); AR 740.09(6)(A).

Officials must respond to a Second Level Grievance within 60 days and specify "the decision and the reasons for the decision." (ECF No. 62-4 at 15-16); AR 740.10(3), (5). Once the inmate receives a decision there are no further steps and the inmate is considered to have exhausted their available administrative remedies. (ECF No. 62-4 at 13-16); AR 740.08-10. If prison staff fail to respond within the prescribed 60-day period, the inmate must submit an Offender Request Form. (ECF No. 62-4 at 15); AR 740.10(4). The official then has an additional 60 days to either respond to the Offender Request Form or the underlying grievance itself. (ECF No. 62-4 at 15-16); AR 740.10(4). If the official fails to do so "the offender will have exhausted the administrative remedy process." (ECF No. 62-4 at 15-16); AR 740.10(4). The official may also inform the inmate more time is needed in response to the Offender Request Form. (ECF No. 62-4 at 16); AR 740.10(4). In such cases the official must provide the inmate with "a timeframe in which a response will be provided." (ECF No. 62-4 at 16); AR 740.10(4). If the official fails to meet that timeline "the grievance process will be considered exhausted." (ECF No. 62-4 at 16); AR 740.10(4). Once a grievance is exhausted the inmate may then pursue civil litigation in federal court.

Inmates may also file an Emergency Grievance for "an issue or situation that is life-threatening for the offender or a safety and security risk for the institution." (ECF No. 62-4 at 10); AR 740.07(1). Officials are required to review Emergency Grievances within 24 hours of receipt and respond as soon as practicable under the circumstances. (ECF No. 62-4 at 10); AR 740.07(2), (5)-(6). If an Emergency Grievance is deemed to not be an emergency, "the offender may file a grievance appeal commencing at the Informal Level." (ECF No. 62-4 at 10); AR 740.07(7).

Inmates are required to follow proper procedure throughout the grievance process, and failure to do so may cause the inmate's grievance to be rejected. (ECF No. 62-4 at 4-5); AR 740.03(1). For example, a grievance which "does not factually demonstrate a loss or harm and does not state the action or remedy that will satisfy the claim" is deficient and will be returned "with an explanation as to what was missing for the grievance to be processed." (ECF No. 62-4 at 4); AR 740.03(1)(A). In such cases, the inmate must correct the issues identified and resubmit their grievance at the same level. (ECF No. 62-4 at 6); AR 740.03(6).

Additionally, an official's failure to respond within the prescribed timeframes at each level "is not an automatic finding for the offender." (ECF No. 62-4 at 6); AR 740.03(9). Rather, when a response is overdue the inmate can *either* "proceed to the next grievance level" or "wait[] for the response before initiating the appeal." (ECF No. 62-4 at 6); AR 740.03(9)(B), (C). If the inmate chooses to wait for a response the official's delay "does not count against the offender's timeframe for an appeal." (ECF No. 62-4 at 6); AR 740.03(9)(C). Thus, even if an inmate's Informal or First Level grievance is not responded to within the prescribed time limits, the inmate is still required to proceed through the grievance process outlined above to fully exhaust their claim.

Lastly, if an inmate is transferred while a grievance is pending the aforementioned "[t]imeframes do not apply." (ECF No. 62-4 at 9); AR 740.06(2). Nevertheless, officials are still required to adhere to the timeframes "as closely as possible" and must process the grievance "as soon as practicable. (ECF No. 62-4 at 9); AR 740.06(2).

### 2.    Dominguez's Exhaustion

Defendants argue, *inter alia*, they are entitled to summary judgment because Dominguez did not properly exhaust his administrative remedies prior to filing suit. (ECF No. 62 at 19-25.) Dominguez argues in response he could not properly grieve because he "is a Spanish speaking person, who is not adept at the laws and rules governing the exhaustion requirements." (ECF No. 73 at 11.) The Court agrees with Defendants.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524-25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.

However, an inmate need not exhaust when circumstances render administrative remedies "effectively unavailable." *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010). In *Ross v. Blake*, the Supreme Court provided a non-exhaustive list of circumstances where administrative remedies were not capable of use: (1) where the procedure "operates as a simple dead end" because officers are "unable or consistently unwilling to

8

provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 578 U.S. 632, 642-44.

The Ninth Circuit has also "recognized specific circumstances that render administrative remedies unavailable." *Fordley v. Lizarraga*, 18 F.4th 344, 351-52 (9th Cir. 2021). For example, when prison officials fail to provide inmates with the proper forms in a timely manner the administrative process is effectively unavailable. *Id.* (citing *Marella v. Terhune*, 568 F.3d 1024, 1026 (9th Cir. 2009) (per curiam)). Nor are administrative remedies available when prison officials improperly "screen out" an inmate's grievance thus preventing them from "pursu[ing] the necessary sequence of appeals." *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010). Lastly, if prison officials fail to respond to an inmate's grievance in the time prescribed by the relevant regulation it "may demonstrate that no administrative process is in fact available." *Brown v. Valoff*, 422 F.3d 926, 943 n.18 (9th Cir. 2005); *see also Andres v. Marshall*, 867 F.3d 1076, 1078-79 (9th Cir. 2017) (collecting cases from other circuits holding that administrative remedies are effectively unavailable when prison officials fail to respond to an inmate's grievance in the prescribed time period).

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted their administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative

remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

Here, Dominguez filed two grievances related to his abdominal pain, neither of which he properly exhausted. First, Grievance # 2006-31-48902 was rejected because officials determined Dominguez's pain did not constitute an emergency. (ECF No. 62-8 at 7.) If Dominguez disagreed with that determination he was required to file an Informal Grievance. (*See* ECF No. 62-4 at 10); AR 740.07(7). However, Dominguez's grievance record demonstrates he did not pursue an Informal Grievance and instead abandoned his grievance. (*See* ECF No. 62-8.) Dominguez therefore failed to properly exhaust Grievance #2006-31-48902.

Second, Grievance # 2006-31-48820 was untimely and improperly grieved. AR 740.08(4)(A) states if an inmate fails to submit their grievance within six months it "shall constitute abandonment of the offender's grievance at this and all subsequent levels." *See also* NRS 209.243 (noting a prisoner's claim "must be filed within 6 months after the date of the alleged loss, damage or injury"). Here, Dominguez explicitly stated he was submitting his grievance in relation to a kite he submitted to medical on October 22, 2019, roughly three and a half years beforehand. (ECF No. 62-7 at 2.) Dominguez's grievance was therefore untimely.

Beyond being untimely, however, Dominguez's grievance was improperly appealed to the Second Level. AR 740.03(6) states an inmate may not proceed to the next level if their grievance is deemed not accepted and returned to them. (ECF No. 62-4 at 6.) Indeed, the form given to Dominguez rejecting his Informal Grievance clearly stated he "may NOT proceed to the next level" because his grievance was untimely. (ECF No. 62-7.) Dominguez was therefore on notice he could not proceed to the First Level,

yet he did so anyway. Thus, Dominguez cannot avail himself of the fact he proceeded to the Second Level because his doing so was improper, and the PLRA requires proper exhaustion. *See Woodford*, 548 U.S. at 94.

Dominguez argues that because his primary language is Spanish, he did not fully understand the grievance procedure and believed "he had done the grievance process correctly." (ECF No. 73.) The Court is unpersuaded. Although courts have suggested an inmate's "lack of familiarity with English may excuse a failure to exhaust," that is only the case when the inmate "is given insufficient assistance by prison officials" to properly use the grievance process. *Lang Vo Tran v. Ill. Dep't of Corrs.*, 2011 WL 816630, at *8 (S.D. Ill. Mar. 1, 2011); *see also Bazaldua v. Williams*, 2022 WL 744479, at *4 (D. Nev. Mar. 10, 2022) (adopting reasoning in *Lang Vo Tran*); *Beltran-Ojeda v. Doe*, 2013 WL 6059242, at *3 (D. Ariz. 2013) (noting if prison staff refused to accept grievances written in Spanish or provide an interpreter it could "constitute an exception to the exhaustion requirement"). This is because by failing to provide proper assistance prison officials have rendered the grievance process effectively unavailable. *See Sapp*, 623 F.3d at 822 (noting inmates are not required to exhaust administrative remedies when circumstances render them "effectively unavailable").

Here, there is no evidence indicating Dominguez sought assistance from prison officials and was denied. If anything, the record undercuts Dominguez's argument because the record establishes he properly grieved other issues in English. (S*ee* ECF No. 62-8.) Moreover, throughout this litigation Dominguez has been able to draft and respond to motions and Court orders in English without issue. Indeed, Dominguez's opposition to Defendants' motion for summary judgment is written in English and substantively responds to each of Defendants' arguments. (ECF No. 73.) Thus, even if Dominguez is not fluent in English, he has access to adequate resources to help him interpret and draft documents. Even if he did not, however, Dominguez has produced no evidence indicating he sought assistance from prison officials and was denied.

Accordingly, the Court finds Dominguez has failed to produce evidence indicating

the grievance process was effectively unavailable, and concludes Defendants are entitled to summary judgment on the basis Dominguez failed to properly exhaust his administrative remedies.[2]

**IV.     CONCLUSION**

The Court notes that the Parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines they do not warrant discussion as they do not affect the outcome of the issues before the Court.

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment, (ECF No. 62), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk **CLOSE** this case and **ENTER JUDGMENT** accordingly.

DATED: March 23, 2026

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[2] Because the Court's finding that Dominguez failed to properly exhaust his administrative remedies is dispositive, the Court need not address the other arguments raised by the Parties.